v. Marvin Green. Ian McDonald is here for the appellant, Green, and Sterling M. Paulson is here for the government. And, Mr. McDonald, you may begin your argument. May it please the Court, Ian McDonald, Assistant Federal Defender, here on behalf of the appellant in order to have the potential to facilitate the truck burglary that occurred two days prior to Mr. Green's arrest. And this is for two related reasons. First, the burglary had already been completed two days prior, so there was no way Mr. Green's possession of the firearm on the date of his arrest and the instant offense could have potential to facilitate it. Second, there's no evidence in the record that Mr. Green was ever aware of the firearm's presence at the time of the burglary. Mr. McDonald, I had a question regarding the second point that you raised. You didn't raise that below to the District Court judge, the issue of knowledge. That's right, Your Honor. That's something you're raising for the first time here? It's an argument I'm raising for the first time here, yes, Your Honor. But since it wasn't raised below, are you asking us to find plain error? I'm not, Your Honor. And the issue below was preserved. And once an issue is preserved, any argument can then be made on appeal in advance of that issue, in furtherance of that issue. Okay. So there's a case on that. I looked at that, Your Honor. It's a case called Brown. And what's the citation? I can give you the citation for it. One moment. You mentioned, I guess you're relying on the commentary, right? Yes, Your Honor. To support your argument that the firearm has to facilitate the other felony offense. And I see that language in the commentary in 14A. But what do you have to say about the remainder of the commentary, 14B? It states that the enhancement applies when the prior felony offense was a burglary. The defendant found and took a firearm during the course of said burglary, quote, even if the defendant did not engage in any other conduct with that firearm during the course of the burglary, period. That seems to support the district court's conclusion that the enhancement applies, doesn't it? I don't think it does, Your Honor. And I'll address that. To quickly answer your question, Judge Lagoa, U.S. v. Brown, 934 F. 3rd, 1278 at 1306 to 07 is the citation. Thank you. Thank you, Your Honor. And Judge Wilson, to address your question. To address your question, Judge Wilson, there's a couple of things here. First, in 2K2, the guidelines direct the court to look at relevant conduct. And we look in order to determine the relationship between the other offense and the instant offense. It says to look at 1B1.3, which is relevant conduct principles. I think the portion that Judge Wilson directed you to indicates that we're not looking at another offense. We're looking at this offense. We're putting on the nose for what happened here. The instant offense is felon possession. And the other felony that the in connection with enhancement has been applied to was the truck burglary that occurred two days prior. So there's a couple of things on the truck burglary. First, it occurred two days prior. It doesn't fall within the scope of relevant conduct of the instant offense because it wasn't part of the same course of the same common planner scheme or same course of conduct. And so it doesn't qualify as relevant conduct. Therefore, the enhancement doesn't apply for that reason. I think that the example that Judge Wilson just cited out of the commentary is really straight out of A1, under 1B1.3, relevant conduct. It's all acts willfully caused, aided and abetted by the defendant that occurred during the commission of the offense of conviction. And in that example, during a burglary... the burglary took place. Even though there's no requirement that he know that it was there, the fact that it was available for use as a weapon increases the danger of violence regardless of its use. I think that there's the distinction there, Your Honor, is that the other commentary that Your Honor cited talks about, and this is application note 14B that Your Honor cited. It says that the enhancement applies in a case which a defendant, during the course of a burglary, finds and takes a firearm. Finds meaning that the defendant found it, knew it was there, and takes it. And it goes on to say... Where's the language that knew it was there? You're adding that. Well, it goes on then to say, in these cases, application of the enhancement is warranted because the presence of the firearm has the potential of facilitating the felony offense. And I think that's to your point, Your Honor. The danger... I certainly take... Yeah, but there's no requirement that he knew it was there. I think that... I don't see that language anywhere in any commentary or any precedent. I agree with you on that, Your Honor. There's no language saying that specifically. But in order for a firearm to, quote, have the potential of facilitating the other felony offense, I think that the defendant would have to know that it was there. If the defendant was unaware of the firearm's presence, it has absolutely no potential... But how do you address or distinguish, then, the case of United States v. Young, where the court said, possession of firearms obviously increases the danger of violence, whether or not such weapons are actually used. If armed burglars encounter the occupants of a home or law enforcement official, it makes little difference how the burglars obtain their firearms. In that after the burglary. This is the... I know it's a different sentencing guideline, but... It is. It's a different sentencing guideline. And this is the... Is this the 1997 case that you're citing, Your Honor, that's referring to the ACCA guideline? There are two Youngs. Yes. Yes. Okay. There's another Young that was later. So this case, Your Honor, it was... First of all, this case was decided in 1997, which is prior to 2006. And that's when Amendment 491 went into effect, which added this language about facilitate, have the potential to facilitate, and also added the example that Judge Wilson cited, the commentary about the firearm being taken during the course of a burglary. So in that case, the 11th Circuit was saying, there's no... They specifically said there's no definition of in connection with, so we have to look at the plain meaning. They looked at Webster's, and they specifically looked at some other circuits were using this language that then appeared in the guidelines in 2006, which is potential to facilitate. The Young case said, we're going to reject that, and we're going to to address the confusion over what in connection with meant. And they say that in Amendment 691. They say there was a circuit split about what the words in connection with mean. And so they went ahead and amended it to add the facilitator potential to facilitate language, as well as the burglary example. And they specifically cited, and I think this is important, in Amendment 691, the Sentencing Commission specifically cited a Supreme Court case called Smith v. U.S. 508 U.S. 223. There, the Supreme Court was dealing with in relation to the same word, similar words in the 924C context. They said that that was expansive, but has boundaries, trying to define it. They looked at Webster's, but they said, this is the Supreme Court at a minimum. It clarifies the firearm must have had some purpose or effect with respect to the drug crime. Its presence or involvement cannot be the result of accident or coincidence. And it allays the concern. Was it an accident that your client took this firearm? I believe the record shows that it was, Your Honor. And what you see is, what's in the factual proffer and what's in the pre-sentence report, is that what you see is Mr. Green on a bicycle biking near a U-Haul truck. He then goes off of the security frame for a brief period of one minute. Then you see him reappear. He has no backpack on at that time. You see him then reappear across the street, biking away with a backpack from the U-Haul. That's the same backpack that he was found with two days later. He burglarized the truck, right? I think there's no, I think there's no dispute about that, Your Honor. He burglarized the truck and then stole the backpack. Correct, Your Honor. I think that's right. So that doesn't sound like a coincidence. That sounds like he intentionally burglarized the truck and stole a backpack. I think that's right, Your Honor. I think that he did intentionally burglarize the truck and steal a backpack. The question is, did he know that the gun was in the backpack? And the record, there's no record evidence that he did. In fact, it points the other way because he was arrested with that same backpack. Your argument may have, I mean, we're here now on a preponderance of the evidence, correct? Correct. Because this is a plea agreement. This is not, you know, you didn't go to trial on this issue. So the issue I have is, at least I speak for myself only, is that if your client had been found immediately right after the burglary, then maybe I could, I could, you could maybe have a viable knowledge argument. But this is two days later when the, your client has the ability to look inside the backpack and determine what he wants to keep or not keep. He has two backpacks at that, at the time that he's found two days later. That's right, Your Honor. And I think that that actually, the difference in time here is why this enhancement doesn't apply. Because he was arrested two days later. At that time, surely he would have found, looked in the backpack and found the gun. I agree. But this is long after the burglaries. You have the owner of the truck who testifies that that is his gun and that was his ammo that was stolen. That was in the backpack and he provided a receipt for purchase of the gun. So it's clear that the gun and the ammo, the 20 rounds of ammo, were inside the backpack that was in the truck that was purloined by your client. No question, Your Honor. That's right. The question is, was Mr. Green aware that a gun was in there because the gun was in a zippered pouch inside a zipped up backpack? He may not have been aware at the moment that he took the backpack because no one knows what's inside the backpack. But once he retrieved the backpack, stole it and left with it, uh, and he had it for two days, how can you really make an argument that he didn't know it was inside the backpack? I'm not, and I apologize if I'm being unclear. I am not making that argument at all, Your Honor. My argument is that at the time he's been, the enhancement is for possessing a gun in connection with another felony, i.e. the burglary. Here, the burglary was two days prior. In order for the enhancement to apply, that firearm has to be able to facilitate the burglary. But that's not what, that's not what Smith says. That's not what Young says. That's not what the commentary says. Um, I, I respectfully disagree, Your Honor. The commentary does say the firearm has to have facilitated or have the potential to facilitate the other, quote, felony offense. It's just part of the commentary. That's just 14a. You're not reading 14b. You're leaving out 14b. Um, Your Honor, 14b says whoever finds and takes a firearm during the commission of a burglary, the enhancement applies. And then it goes on to say because the firearm had the potential to facilitate the burglary. 14b doesn't have to say anything about facility. Respectfully, Your Honor, it does. The last sentence of 14b says the enhancement is warranted because the presence of the firearm has the potential of facilitating another felony offense, end quote. So it does say that. The problem, one problem for you is that there was a circuit split before the comment, before this edition of the commentary where one set of circuits would have said the enhancement did not apply to your client. The other set of circuits would have said the enhancement did apply to your client. And 14b was put in place to adopt the perspective of the set of circuits that said it would apply to your client. I'm not sure that that's exactly it, Your Honor. I think there was a circuit split about what the meaning of in connection with was and some confusion about, um, that in the drug context, that's, that's my understanding. Um, so I think that's why, uh, Amendment 691 was put in place. All right. I see I'm long over my time. I apologize. Let you go way over, Mr. McDonald. Yeah, I, I, I was trying to respond to your question. So I apologize for going over. Thank you, Your Honors. Thank you. Mr. Paulson, uh, for the government. Good morning, and may it please the court, Sterling Paulson for the United States. I also have at the council's table, Joseph Egozi, who handled the, uh, this, this case at the district court level. The government's position here is that the guidelines were correctly calculated, and this court can recognize that through a number of ways. First on a plain meaning reading of in connection with, uh, Marvin Green possessed a gun in connection with the very burglary in which he stole that gun, burglared it from the truck. So I think on, on the plain we're clear here. Um, defense focuses a lot on this 14A, uh, in general commentary, but 14B is more specific, more on point and addresses this very, uh, issue here. And then on the relevant conduct as well, 14E discusses what is relevant conduct, right? Possessions of continuing offense. And when you have a possession that took place or a prior felony offense that took place before the charge possession, that is relevant conduct that's reflected in comment 14E. So for all those reasons, the government, and I think the court has addressed this, uh, already now. We don't really, if we, um, if we, um, think that the enhancement applies based on the plain language of the guideline itself, we don't even need to look at the commentary, do we? Correct, your honor. Okay. The plain language here, again, in connection with, I think is, is, uh, adequately covers what took place here. For example, if I say I received a bonus in connection with my work performance, we're talking about work performance that's already taken place. I think that's the conversational way you would read that plain language. And when we look at the, the young decision that I understand it's pre the amendment, but the discussion there, uh, by this court with regards to the language in connection, we can also apply in this case. Correct, your honor. And I think, you know, that commentary came after young, it came after, uh, Rind, the 2002 decision where the court again, um, adopted a, an expansive reading of the phrase in connection with under these kinds of circumstances and, uh, you know, Rind and then the, the Johnston case from the eighth circuit. Also, um, you have a sequence of events where the prior felony offense has already been completed. And then you have later possession of the firearm that's charged in an indictment. And that in connection with language covers that prior felony. What, um, again, um, we may not need to get there, but I, I will say for my own part, I have a, a really big concern about making a keen announcement before the guidelines are discussed. Why, why is that consistent with what our usual requirements for keen statements are? Yeah. So the government's position is that there is no timing or scope requirement for a keen finding. And I think it's important to recognize that the keen finding here was narrow and tailored to a particular issue right when the court ruled on that particular issue. Um, and I also think it's important to note that what the court did not do is pre-announce a sentence and then plug it to yours. The court simply said, I've looked at this issue. I'm making a keen finding as to this issue. I understand he made it as to the enhancement, but I guess my question is, isn't really the keen finding supposed to be really about the reasonableness of the sentence after you look at all the factors. Correct your honor. And I think that's what the district court did here. It said, I'm making a keen finding as to this issue. Well, he made it as to the enhancement, but the question is, is that appropriate? I don't know if we need to get to it because I think you a miscalculation in the guidelines, but is it appropriate to do it with respect to just the enhancement when it's really supposed to be about the entire, the totality of the reasonableness of the entire sentence? Again, your honor, I think that what took place here is the court made the keen finding as to this enhancement, but still said it was going to engage in a thorough review of the 3553A factors and ultimately reach a reasonable sentence. That makes his evaluation of the 3553 factors a meaningless exercise. It doesn't matter. It doesn't matter what the 3553 factors come out to be. I'm going to give you this. This is the sentence you're going to get anyway, so why even have a guideline calculation to begin with? Yeah, so respecting . . . This particular district judge is the only district judge in the circuit who makes his keen statements before he even calculates the guidelines. We have another case this week involving this same district judge doing this exact same thing. It seems like that's just an exercise to insulate the judge's sentencing decision from appellate review. So respectfully, your honor, I don't think that what did not take place here or I believe in the other case you're referencing is a pre-announcement of a numerical sentence that the court was going to reach where the court is foreclosing all argument and saying this is my sentence regardless of what takes place. Quite the opposite. In this particular case, the court said, I've looked at this issue, but I'm still going to survey the rest of the record here, all the other arguments. But you do agree, though, that it is a best practice for the district court judge to hear all the arguments and the evidence, and then when they're going to announce their sentence at the end, if this is what they really believe, to say regardless of whether or not the enhancement applies, if the Eleventh Circuit says I'm wrong, I would still impose 120 months because of the criminal history or the 353 factors. Is that not the best practice? I think that may be the typical practice, but this court said... I mean, do you have any other district court judges in this district who do what this district court judge does with respect to Keene findings? Your honor, I'm not aware of every single Keene finding that's been made, so I can't particularly address that. But again, I know that a Keene finding is not something that happens in every case. The Keene finding that took place here was narrow and tailored, and I think the record reflects that the court still marched through all the 3553A factors. What's the purpose of the defendant's right to allocution if the sentence can be insulated before that even happens? Your honor, so allocution, you know, a defendant has a right to allocution, and that took place here. But I'd like to address that. But it's meaningless if the sentence has already been insulated from review, or the judge has already decided and said that they won't, he or she won't change it. So in this case, I do not think that the judge had already decided the ultimate sentence. And I'd like to... Then how could the judge know that he wouldn't change it if he hadn't already decided what it was? As to this particular issue, and I'd also like to address the insulation point. The government, again, agrees that a court cannot pre-announce a sentence and then say he's, you know, the court can't say I'm not going to hear argument, I'm not going to consider allocution. I've made my decision, feel free to do what you want, lay your record, and you know, but I'm done here. But a keen finding, again, does not insulate a sentence from review. As a matter of procedural reasonableness, the court still has an obligation to correctly calculate the guidelines and march through those arguments. The court did so here. A sentence is always subject to substantive reasonableness review by this court. Uh, and specific in the Keene context and in Keene itself. Yeah, the problem here is that he doesn't appeal the substantive reasonableness of his sentence, just the procedural reasonableness of the sentence. So, he didn't even raise that issue on appeal. And so, and also, I mean, isn't it conceivable that the district judge, after going through the 35-53 calculation could say, you know what, I'm not going to sentence him to 100 months. That's conceivable, but then if you already say I'm going to sentence him to 100 months before you go through the 35-53 A factors, that makes the calculation pretty much meaningless, doesn't it? I disagree, Your Honor, for several reasons. First, the court here did not pre-announce a 100-month sentence and say, I'm done here. The ultimate sentence came at the conclusion of the hearing and the court laid a thorough record of the 35-53 A factors here. I mean, I guess if I'm understanding your argument, is that what you're suggesting is that the only finding he made that he applied a Keene finding to was the enhancement itself, that he would still apply it no matter what, is what I'm understanding. Correct, Your Honor, because you have a body of facts that signal an aggravating circumstance. I understand that, but it still is problematic for purpose, for the reasons that we've, that Judge Grant asked about, like allocution. I mean, it's problematic. I would think that perhaps since all of us are aware that there's only one district judge who's doing it in this way, the United States might consider whether it wants to so vigorously defend it or perhaps move to different arguments. So again, Your Honor, I think we don't need to reach the issue here again because of the plain language and the commentary. But again, just as a matter of procedural reasonableness, the court still has that obligation. But when this court reviews procedural reasonableness, what this court often does and almost always does is engage in harmless error analysis to determine whether any error was harmless. That's the very basis for having a Keene finding. And so this court, in order to engage in harmless error analysis, looks to the substantive reasonableness, assumes that the defendant's objections would have been granted and that the defendant's guideline calculation would have been correct, and then marches through that analysis with, you know, some deference to the defendant in the sense that the court's assuming that the district court, you know, was incorrect in its objection should have been granted, and then looks to those guidelines and the rest of the 3553A factors to determine whether the ultimate sentence was substantively reasonable in order to, you know, because you can have a procedural error and that error can be harmless. And there are many cases from this court where that's precisely the case. So I think that's why, you know, the record here, I think that's one of the issues is that the defendant doesn't even attempt to argue that the sentence was not substantively reasonable here. At the sentencing hearing, defense counsel acknowledged a number of aggravating factors, even, you know, even in making his recommendation as to what his client should receive, the court laid a thorough record as to how it weighed those factors. You know, to note a few of them, a very high criminal history score in a very, you know, accrued over a very short period of time, a number of violent offenses across classes of victims, danger to public safety, and a need to promote respect for the law. So, again, I would defer to my briefing as to the substantive reasonableness of this sentence. And for that reason, I think, you know, the guidelines were calculated correctly. You do have a keen finding. And even if this court, you know, is not inclined to, you know, disfavors a keen finding, it still needs to view it as a procedural error and engage in harmless error analysis, which starts with, was the sentence substantively reasonable? Because, again, the basis for a keen finding is, are we going to send this case back to the district court, have it reaffirm its very sentence, and then have it sent back up here for a substantive reasonableness review? That is what the keen finding is the purpose that it serves. And that's why this court can always review for substantive reasonableness on the front end to kind of avoid that situation. All right. Thank you, Mr. McDonnell. Thank you. Okay. I'm sorry, Mr. Paulson. Mr. McDonnell now has reserved some time for rebuttal. I'll just respond very briefly. I think your honors addressed the keen issue. You hit all the points I was basically planning to hit in rebuttal. I will just say briefly. We were just asking the questions. Well, I appreciate those questions, your honor. So that means that I don't . . . The problem for you is your client was sentenced to 100 months. If we vacate and remand, the statutory maximum is 120 months. So he could get 20 more months if we vacated and remanded it back, right? He certainly could under the law, your honor. I hope that wouldn't happen, but that's absolutely possible, yes. I think to one of the points here, and I think Judge Legault was talking about this, and the government was talking about this substantive reasonableness. This is not a substantive reasonableness question. I think you were asking about that, Judge Legault. This is a procedural reasonableness issue. And what we have here is essentially the court committing significant procedural error, which is reversible in and of itself. Gall and the Supreme Court, it's clear what needs to happen here. And I'll try to be quick and move back to my other argument. But the court is first required to calculate the guidelines. To your point, Judge Wilson, what's the point of calculating the guidelines if the judge already has the sentence in mind? Required to calculate the guidelines. Here, the judge only heard argument on one enhancement, overruled that, then heard arguments on other enhancements. One was sustained, so that changed. The guidelines, the base offense level was 24. It changed to 20 after he had already made this Keene finding. So he couldn't have even known what the guidelines would have been at the time he made the finding. Then second, the court is required to consider 3553. Mr. McDonald, let me ask you a question. I mean, I did read the transcript. And the district court judge clearly made the Keene finding with respect solely. I mean, this is how I read the transcript to the four-point enhancement. The question is whether or not that is really an appropriate Keene finding, or if it was ineffective, because really a Keene finding should go to the reasonableness of the entire sentence. I think that's right. I think that's certainly right, Your Honor. I think it's inappropriate for that reason. And he certainly wouldn't have known what the reason was at the time he made it, because he's required to hear argument on 3553. So really, at the end of the day, the Keene finding, whatever Keene finding he made, it was ineffective and void, I guess, for lack of a better word. I think that's right, Your Honor. Absolutely. So to quickly pivot back to the issue one here, which is the in connection with enhancement, the government is talking about, let's look at just the meeting. What does in connection with mean?  They cite the Young case, but Young specifically said there's no definition of what in connection with means, so let's find it out. That there is a specific definition in the guidelines, and it means facilitator had the potential to facilitate. And in order for a firearm to have potential to facilitate a burglary, the burglar needs to know that the firearm is present. Otherwise, it has absolutely no potential to facilitate. And the purpose for this really, I think, kind of explains it. The reason why this enhancement is there is because of the example that Judge Wilson cites that's in the guidelines. If a burglar finds a firearm during the course of that burglary, that firearm can then be used to facilitate escape, try to evade law enforcement if someone confronts them. That firearm has the potential of danger and to facilitate that offense. The commentary, though, doesn't say facilitating that exact offense. It says the potential of facilitating another felony offense or another offense, respectively. So if you don't realize that you are taking a firearm, which I'm a little bit skeptical of, but if you don't realize that you're taking a firearm and then you discover it later, it still has the potential to facilitate a different offense. I think a firearm could always facilitate any offense at any time. I think that is true, Your Honor. But here, the enhancement is being applied because of the possession of the firearm in connection with another felony offense. In this case, that truck burglary, that specific truck burglary. Because there was no knowledge of it— The problem, at least for myself, is that the firearm was there in that backpack when he burglarized the truck. So its availability for use has the potential to cause further harm. It was there available for use. I would just clarify, and I don't mean to repeat my same points, but it's there available for use if the defendant knows that it is. I see that I'm running out of time, but I thank you very much, and I respectfully request that the court vacate Mr. Green's sentence for the reasons in this argument and to remand. Thank you very much, Your Honors. All right. Thank you, Mr. McDonald and Mr.